UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

FILED
FEB - 8 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**HUMANA INSURANCE COMPANY**
500 W. Main St.
Louisville, KY 40202

**Plaintiff,**

v.

**PARIS BLANK LLP**
c/o Keith Marcus
1804 Staples Mill Rd.
Richmond, VA 23230

**KEITH B. MARCUS**
1804 Staples Mill Rd.
Richmond, VA 23230

**Defendants.**

**Civil Action No.** 3:16CV79

## COMPLAINT

Plaintiff, Humana Insurance Company ("Humana"), brings this action for declaratory judgment and money damages to recover amounts due and owing to Humana, a Medicare Advantage Organization, by virtue of third party payments made on behalf of "Enrollee,"[1] a Medicare beneficiary who elected Medicare Advantage coverage from Humana.

## PARTIES

1. Plaintiff, Humana Insurance Company, is a Wisconsin corporation with its principal place of business at 500 W. Main St., Louisville, KY 40202. Plaintiff, Humana, contracts with the Center for Medicare and Medicaid Services ("CMS") to administer Medicare benefits for Medicare beneficiaries who elect to enroll in Medicare Advantage ("MA" or

[1] Enrollee's name is known to Defendants but is not being pled in this Complaint to protect her privacy.

"Medicare Part C"). Plaintiff, Humana Insurance Company, is part of the Humana family of companies.[2]

2. Defendant, Paris Blank LLP ("Paris Blank"), is a law firm operating as a limited liability partnership in Richmond, Virginia. Defendant, Paris Blank, provided legal services to Enrollee.

3. Defendant, Keith Marcus ("Mr. Marcus"), is an attorney licensed in the state of Virginia and a member of Paris Blank. Mr. Marcus' office is located in Richmond, Virginia. Defendant, Mr. Marcus, provided legal services to Enrollee.

**JURISDICTION AND VENUE**

4. This action arises under the laws of the United States and involves federal questions. The Court therefore has jurisdiction over the subject-matter of this action under 28 U.S.C. § 1331.

5. Additionally, the Court has supplemental jurisdiction over Counts Three, Four, and Five under 28 U.S.C. § 1367(a).

6. Venue is proper in the Eastern District of Virginia, Richmond Division, because (1) Defendants, Paris Blank and Mr. Marcus, do business in, and thus reside in, this judicial district, and (2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district. 28 U.S.C. § 1391(b) and (c).

**LEGAL BACKGROUND**

7. Medicare is a system of federally funded health insurance for people 65 and older, certain disabled persons, and persons with End Stage Renal Disease. Congress enacted the

---

[2] Together, as of September 30, 2015, the Humana companies provided Medicare benefits to 2,737,100 individual Medicare Advantage enrollees and 481,300 group Medicare Advantage enrollees. As of June 30, 2013, the Humana companies also served 4,509,600 Medicare beneficiaries in the company's individual stand-alone Prescription Drug Plans (PDPs).

Medicare Program as Title XVIII of the Social Security Act ("Medicare Act"). 42 U.S.C. § 1395, *et seq.* Medicare is an enormous and complex federal program that insured over 53 million Americans in 2014 with total expenditures of $613.3 billion.[3] This suit challenges practices that drain money from the Medicare Trust Funds and increase the costs borne by elderly and disabled beneficiaries who enroll in Medicare Advantage plans.

**The Medicare Act**

8. Subchapter XVIII of the Social Security Act – commonly called the Medicare Act – is divided into five "Parts."

9. Part A is automatic and provides hospital and certain other facility benefits. *See* 42 U.S.C. §§ 1395c to 1395i-5. Part B provides medical benefits, and although heavily subsidized by the federal government, is a voluntary program that requires a small premium from the beneficiary. *See* 42 U.S.C. §§ 1395j to 1395w-4. Parts A and B are often collectively referred to as the "original Medicare fee-for-service program option."

10. Medicare Part C creates an alternative option for Medicare benefits provided by private contractors. *See* 42 U.S.C. §§ 1395w-21 to 1395w-29. Congress enacted Medicare Part C to "enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options." H.R. Rep. No. 105-217, at 585 (1997) (Conf. Rep.). Congress initially called this program "Medicare + Choice." *See* Balanced Budget Act of 1997, Pub. L. No. 105-33, Title IV, §§ 4001-4006, 111 Stat. 251, 275-334 (Aug. 5, 1997). In 2003, Congress strengthened the program and renamed it "Medicare Advantage." *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, Title II, §§ 201-241, 117 Stat. at 2176-221.

[3] *See* 2015 Annual Report of the Boards of Trustees of the Federal Hospital Insurance and Federal Supplementary Medical Insurance Trust Funds, p. 7.

11. Medicare Part D is the voluntary prescription drug benefit, added in 2003. *See* Title I, §§ 101-111, 117 Stat. 2066, 2071-176 (Dec. 8, 2003) (codified at 42 U.S.C. §§ 1395w-101 to 1395w-152).

12. The final "Part" of Title XVIII is Medicare Part E, which contains definitions and general provisions applicable to the whole of the Medicare program. *See* 42 U.S.C. §§ 1395x – 1395y. The Medicare Secondary Payer law, 42 U.S.C. 1395y(b), is codified in Part E.

**The Medicare Advantage (Medicare Part C) Program**

13. The Medicare Act guarantees eligible beneficiaries the right to elect to receive Medicare benefits either through the Original Medicare fee-for-service option or through a Medicare Advantage plan. *See* 42 U.S.C. § 1395w-21(a). Approximately 30% of all Medicare beneficiaries chose to enroll in Medicare Advantage plans.

14. Medicare Advantage is a federal program, operated under federal rules, funded by federal dollars.

15. The funds for Medicare Advantage benefits come from the Medicare Trust Funds. *See* 42 U.S.C. § 1395w-23(f). The Medicare Trust Funds expended approximately $145.6 billion to provide Medicare benefits through the Medicare Advantage program in 2013.[4]

16. The Conference Committee which finalized the legislation that became Medicare Part C intended that both the original Medicare option and the Medicare Advantage option would be regulated by the Federal government which would "alone set legislative requirements regarding reimbursement, covered providers, covered benefits and services, and mechanisms for resolving coverage disputes." Balanced Budget Act of 1997, P.L. 105-33, H.R. Conf. Rep. 105-217 (July 30, 1997). The conferees believed that Medicare Advantage would "eventually eclipse

---

[4] 2015 Annual Report of the Boards of Trustees of the Federal Hospital Insurance and Federal Supplementary Medical Insurance Trust Funds, Table IV.C.2 (HI and SMI combined), p. 156.

original fee for service Medicare as the predominant form of enrollment under the Medicare program. *Id.*

**Medicare Advantage Organizations**
**And the Medicare Secondary Payer Law**

17. In 1980, in response to skyrocketing costs, Congress began enacting the provisions that now comprise the Medicare Secondary Payer law ("MSP law"), 42 U.S.C. § 1395y(b). The primary intent underlying the MSP law is to shift the financial burden of health care from the Medicare program to private insurers and thereby lower the cost of the Medicare program.

18. The MSP law is codified as 42 U.S.C. § 1395y(b), in Part E of the Medicare Act, which contains definitions and other general provisions pertaining to the Medicare program as a whole. The terms of the MSP law make clear that it is applicable to all payments "under this Subchapter," 42 U.S.C. § 1395y(b)(2)(A), which includes payments made by MAOs under Part C of the Act.

19. Moreover, Part C of the Medicare Act expressly incorporates the MSP law into the Medicare Advantage program, authorizing an MA organization to charge a primary plan or an individual that has been paid by a primary plan "under circumstances in which payment under this title is made secondary pursuant to" the MSP law (§ 1395y(b)(2)). 42 U.S.C. §1395w-22(a)(4). In doing so, Congress expressed its understanding and intention that the MSP law applied to Medicare Part C.

20. The MSP law creates a federal coordination of benefits scheme, in which worker's compensation, liability insurance, and no fault insurance are primary, and Medicare benefits are secondary. *See* 42 U.S.C. § 1395y(b)(2); 42 C.F.R. § 422.108(b)(3).

21. When an MA organization makes a payment for medical services that are the responsibility of a primary plan under the MSP law, those payments are conditional, whether the primary plan's liability was established at the time of the conditional payment or not. Federal regulations define the term "conditional payment" under the MSP law to mean "a Medicare payment for services for which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that the other coverage existed." 42 C.F.R. § 411.21.

22. As with any system of coordination of benefits, the Medicare Secondary Payer regime involves both avoidance and recovery. Optimally, when items and services are covered by both a primary plan and by Medicare benefits, the providers submit their charges to the primary payer, and Medicare ***avoids*** the expense of paying those charges. Alternatively, when Medicare makes a conditional payment for medical services that have a primary payer, regardless of the reason, Medicare may seek to ***recover*** those conditional payments. *See* 42 U.S.C. § 1395y(b)(2); § 1395y(b)(3)(A).

23. Because Medicare Advantage is simply another way in which Medicare beneficiaries may receive Medicare benefits, the same MSP rules apply. *See* CMS, Medicare Managed Care Manual, Chap. 4, § 130.3 (Rev. 107, 06-22-12) ("In the case of the presence of workers compensation, no-fault and liability insurance (including self-insurance), Medicare makes conditional payments if the other insurance does not pay promptly. These conditional payments are subject to recovery when and if the other insurance does make payment.").

24. CMS has interpreted the MSP law as it applies to MA organizations in a formal regulation, which states that "[t]he MA organization will exercise the same rights to recover from a primary plan, entity or individual, that the Secretary exercises under the MSP

regulations." 42 C.F.R. § 422.108(f). An entity that receives payment from a primary plan shall therefore be required to reimburse an MA organization for conditional Medicare payments.

25. CMS has further explained that the regulation assigns MA organizations 'the right, under existing Federal law, to collect for services for which Medicare is not the primary payer" using "the same rights of recovery that the Secretary exercises under the Original Medicare MSP regulations." CMS, Memorandum: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011).

26. The MSP law makes clear that "a primary plan, and an entity that receives payment from a primary plan, shall reimburse" any conditional Medicare payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

27. An attorney that receives a tort settlement or other primary payment, on behalf of a Medicare beneficiary, is "an entity that receives payment from a primay plan" under the MSP law. *U.S. v. Harris*, 2009 U.S. Dist. LEXIS 23956 (N.D. W. Va. 2009) *aff'd*, 2009 U.S. App. LEXIS 23394 (4th Cir. Oct. 23, 2009) (holding an attorney individually liable to reimburse Medicare under the MSP law). *See also U.S. v. Weinberg*, 2002 U.S. Dist. LEXIS 12289 (E.D. Pa. 2002); *Denekas v. Shalala*, 943 F. Supp. 1073, 1080 (S.D. Iowa 1996); *U.S. v. Sosnowski*, 822 F. Supp. 570, 573 (W.D. Wis. 1993).

28. The enforcement provision of the MSP law authorizes a private cause of action to recover primary payments or reimbursements owed under the MSP law. 42 U.S.C. 1395y(b)(3)(A). The provision further provides that damages "shall be in an amount double the amount otherwise provided." *Id.*

29. An MA organization that has advanced Medicare benefits has standing to bring the MSP private cause of action. *In re Avandia Mktg.*, 685 F.3d 353 (3d Cir. 2012); *Humana*

*Med. Plan, Inc. v. W. Heritage Ins. Co.*, 94 F. Supp. 3d 1285 (S.D. Fla. 2015); *Cariten Health Plan, Inc. v. Mid-Century Ins. Co.*, 2015 U.S. Dist. LEXIS 126887, at *14 (E.D. Tenn. Sep. 1, 2015); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 665 (E.D. La. 2014); *Humana Ins. Co. v. Farmers Tex. Cnty. Mut. Ins. Co.*, 95 F. Supp. 3d 983, 986 (W.D. Tex.).

30. Plaintiff, Humana, has standing under 42 U.S.C. § 1395y(b)(3)(A) to bring this private cause of action to recover double damages from Defendants, Paris Blank and Mr. Marcus, because (1) Humana made payments of Medicare benefits on behalf of its MA enrollee, Enrollee, for which Humana was not primarily liable and (2) Defendants received payments from plans that were primarily liable but failed to reimburse Humana.

31. When Medicare Advantage plans recover reimbursement from primary plans or other liable parties pursuant to the MSP law, those recoveries help reduce Medicare expenditures by the Medicare Trust Funds. *See* HHS, *Medicare Program; Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs*, 75 Fed. Reg. 19678, 19797 (April 15, 2010) ("MA organizations that faithfully pursue and recover from liable third parties will have lower medical expenses.").

32. Thus, MSP recoveries by MA organizations fulfill the essential purpose of the MSP law and Medicare Part C – creating a more efficient and less expensive Medicare program.

## FACTUAL BACKGROUND

33. On or about October 11, 2013, upon information and belief, Enrollee was a passenger in a vehicle that was involved in a serious collision.

34. At the time of the collision Enrollee was eligible for Medicare and had elected Medicare Part C coverage through Humana.

35. Enrollee received Medicare benefits for injuries sustained in the collision. Specifically, Humana has expended $191,612.09 in conditional payments on Medicare claims submitted on behalf of Enrollee for medical services rendered as a result of the collision.

36. After initiating and settling a lawsuit related to the collision, Enrollee received a number of payments from various insurance companies totaling at least $475,600.

37. One such payment was issued by Rockingham Casualty Company on April 17, 2014 in the amount of $20,000 ("the Rockingham Check"). The Rockingham Check was issued under the no fault insurance policy carried by the driver of the vehicle in which Enrollee was a passenger, and was made jointly payable to Humana Inc. and Paris Blank LLP.

38. After receipt of the Rockingham Check, upon information and belief, Mr. Marcus called Rockingham Casualty Company to inquire as to why Humana was listed as a payee and to request that the Rockingham Check be reissued with Paris Blank as the sole payee. This request was denied.

39. Mr. Marcus nevertheless deposited the Rockingham Check on April 29, 2014, without Humana's endorsement. A copy of the cancelled check is attached hereto as **Exhibit A**.

40. A portion of the deposited funds were subsequently disbursed to Enrollee.

41. On July 23, 2014, upon information and belief, Donegal Mutual Insurance Company issued a check to Paris Blank for $250,000, representing a settlement under Enrollee's underinsured motorist policy.

42. Upon information and belief, Enrollee, or Paris Blank on behalf of Enrollee, also received a $100,000 bodily injury settlement from State Farm Insurance Company; a $100,000 underinsured motorist settlement from Rockingham Mutual Insurance Company; and a $5,600 payment under Enrollee's no fault policy with Donegal Mutual Insurance Company.

43. On January 15, 2015, Humana sent Enrollee an Organization Determination. The Determination contained a consolidated statement of benefits showing the amount of reimbursement owed to Humana ($191,612.09), requested payment within sixty (60) days of the receipt of the notice, and provided instructions for how to request a waiver and file an appeal.

44. Mr. Marcus sent a request for waiver on Enrollee's behalf, which Humana received on February 18, 2015.

45. The waiver request included copies of correspondence between Mr. Marcus and CMS which purport to show that Enrollee did not owe any obligations under Medicare Part A or B. The letter did not address whether there were any Part C (Medicare Advantage) liens.

46. On April 12, 2015, Enrollee passed away.

47. On April 23, 2015, Humana denied Enrollee's request for a waiver. The case was forwarded for reconsideration by an independent entity, Maximus Federal Services, as is required by law.

48. Maximus Federal Services sent a letter, dated June 19, 2015, to Mr. Marcus notifying him that he was not authorized to request an appeal as he was not the legal representative of Enrollee's estate.

49. Maximus Federal Services received no further communications from Mr. Marcus.

50. More than 60 days have passed since Maximus requested additional information from Mr. Marcus. The time to request an appeal has therefore passed, pursuant to 42 C.F.R. §§ 422.592–422.596.

51. Plaintiff, Humana, has not received any reimbursement to date for the conditional payments it made on behalf of Enrollee.

## COUNT I

## DECLARATORY JUDGMENT AS TO DEFENDANTS' OBLIGATION TO REIMBURSE MEDICARE BENEFITS

52. Plaintiff, Humana, incorporates by reference the allegations of paragraphs 1 through 51 of the Complaint as if set forth herein.

53. Pursuant to 28 U.S.C. § 2201, and Fed. R. Civ. P. 57, Plaintiff, Humana, is entitled to a Declaration as follows:

(a) The liability, no fault, collision, and underinsured motorist policies issued by State Farm Insurance, Rockingham Mutual Insurance, Rockingham Casualty, and Donegal Mutual Insurance are primary to Medicare, including Medicare benefits advanced by MA organizations such as Plaintiff, Humana.

(b) When an MA organization, such as Humana, has advanced conditional Medicare benefits in circumstances in which its payments are made secondary pursuant to 42 U.S.C. §§ 1395y(b)(2) and 1395w-22(a)(4), it is entitled to pursue reimbursement from a primary plan or entity that received payment from a primary plan under 42 U.S.C. § 1395y(b)(3)(A).

(c) Paris Blank and Mr. Marcus, as entities that received payment from a primary plan, are individually obligated to appropriately reimburse Humana.

(d) Defendants may not avoid their obligations under the MSP law by claiming that there were no Medicare Part A or B reimbursements owed on behalf of Enrollee.

54. Declaratory relief is necessary and appropriate because Defendants have taken the position that contact with CMS regarding the lack of reimbursements owed under Medicare Part

A or B precludes any obligations that arise under Medicare Part C.

**COUNT II**

**PRIVATE CAUSE OF ACTION UNDER 42 U.S.C. 1395y(b)(3)(A)**

55. Plaintiff, Humana, incorporates by reference the allegations of paragraphs 1 through 51 of the Complaint as if set forth herein.

56. Plaintiff, Humana, made payments of Medicare benefits for items and services required by Enrollee as a result of the injuries she sustained in the collision.

57. Rockingham Casualty Company, Rockingham Mutual Insurance Company, Donegal Mutual Insurance Company, and State Farm Insurance Company (collectively "the Primary Payers") were primary payers, as defined in 42 U.S.C. § 1395y(b)(2) and § 1395w-22(a)(4), with respect to medical expenses incurred by Enrollee but paid by Humana. *See also Brown v. Thompson*, 374 F.3d 253 (4th Cir. 2004) (discussing tort settlements as "primary plans" under the MSP law.).

58. At the time it made payment for Enrollee's medical treatment, Humana did not know that primary coverage provided by the Primary Payers existed or that any primary payer could be expected to pay promptly for Enrollee's care. These payments were, therefore, conditional. *See* 42 C.F.R. §411.21.

59. Defendants, Paris Blank and Mr. Marcus, negotiated settlements, on behalf of Enrollee, with the Primary Payers and directly received settlement funds related to the medical services provided to Enrollee after the collision.

60. Defendants, Paris Blank and Mr. Marcus, are entities that received payment from a primary payer, and are required to reimburse Humana pursuant to 42 U.S.C. § 1395y(b)(2)(B)(ii) and 42 C.F.R. §§ 411.24(g), 422.108(f).

61. Defendants, Paris Blank and Mr. Marcus, did not make appropriate reimbursements to Humana for the items and services for which Humana advanced conditional payments.

62. Congress established a private cause of action under 42 U.S.C. § 1395y(b)(3)(A), permitting the recovery of double damages for a failure to make appropriate reimbursement in accordance with the MSP law.

63. Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), Plaintiff, Humana, is entitled to recover "an amount double the amount otherwise provided." Humana made payments of Medicare benefits in the amount of $191,612.09 and is entitled to recover double that amount, $383,224.18, from Defendants Paris Blank and Mr. Marcus.

## COUNT III

## STATUTORY CONVERSION UNDER VA CODE § 8.3A-420

64. Plaintiff, Humana, incorporates by reference the allegations of paragraphs 1 through 51 of the Complaint as if set forth herein.

65. The Rockingham Check is a negotiable instrument, governed by Article 3 of the Uniform Commercial Code, as codified by the state of Virginia.

66. Humana constructively received delivery of the Rockingham Check as the law is well-settled that "in the case of multiply payees, it is sufficient that delivery is made to any of the payees or agents of the payees." *Stefano v. First Union Nat'l Bank*, 981 F. Supp. 417, 421 (E.D. Va. 1997) (applying Virginia law).

67. When Defendants, Paris Blank and Mr. Marcus, deposited the Rockingham Check without securing Humana's endorsement, despite Humana being a named payee, Defendants converted the instrument under Va. Code §8.3A-420.

68. Humana is entitled to recover the full amount of the Rockingham Check.

## COUNT IV

## COMMON LAW CONVERSION

69. Plaintiff, Humana, incorporates by reference the allegations of paragraphs 1 through 51 of the Complaint as if set forth herein.

70. The common law tort of conversion encompasses "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2dd 902, 905 (Va. 1994).

71. Humana had a possessory interest in the Rockingham Check.

72. When Defendants, Paris Blank and Mr. Marcus, deposited the Rockingham Check Humana was deprived of its rights in the instrument, constituting an act of conversion.

73. Humana is entitled to recover the full amount of the Rockingham Check.

## COUNT V

## INDEBITATUS ASSUMPSIT
## MONEY HAD AND RECEIVED

74. Plaintiff, Humana, incorporates by reference the allegations of paragraphs 1 through 51 of the Complaint as if set forth herein.

75. A claim for indebitus assumpsit—money had and received—lies when (1) the defendant is in possession of money, and (2) it ought to be returned to the plaintiff. *Robertson v. Robertson*, 119 S.E. 140, 141 (Va. 1923). When both elements are present the law presumes a promise to pay. *Id.*

76. The law will presume a promise to pay and permit a plaintiff to recover money received by the defendant from a third-party, provided that there was a pre-existing right to the

funds. *John C. Holland Ennter., Inc. v. J.P. Mascaro & Sons, Inc.*, 653 F. Supp. 1242, 1246 (E.D. Va. 1987).

77. Defendants, Paris Blank and Mr. Marcus, received and retained monies that should properly be returned to Humana as reimbursement for the conditional payments made for Medical Services for Enrollee.

78. Humana had a preexisting right to reimbursement from each settlement check received by Defendants on behalf of Enrollee as Humana's conditional payments were secondary to payments made by the Primary Payers under collision insurance, underinsured motorist insurance, or no-fault insurance.

79. Humana is entitled to recover the full amount of its conditional payments, $191,612.09, from the Defendants.

**PRAYER FOR RELIEF**

Based on the above claims; Plaintiff, Humana, seeks the following relief:

(1) An order declaring:

(a) The liability, no fault, collision, and underinsured motorist policies issued by State Farm Insurance, Rockingham Mutual Insurance, Rockingham Casualty, and Donegal Mutual Insurance are primary to Medicare, including Medicare benefits advanced by MA organizations such as Plaintiff, Humana;

(b) When an MA organization, such as Humana, has advanced conditional Medicare benefits in circumstances in which its payments are made secondary pursuant to 42 U.S.C. §§ 1395y(b)(2) and 1395w-22(a)(4), it is entitled to pursue reimbursement from a primary plan or entity that received payment from a primary plan under 42 U.S.C. § 1395y(b)(3)(A);

(c) Paris Blank and Mr. Marcus, as entities that received payment from a primary plan, are individually obligated to appropriately reimburse Humana; and

(d) Defendants may not avoid their obligations under the MSP law by claiming that there were no Medicare Part A or B reimbursements owed on behalf of Enrollee.

(2) Double damages under 42 U.S.C. § 1395y(b)(3)(A)

(3) *In the alternative to double damages*, recovery in the amounts permitted by state law under Counts Three through Five for:

(a) Statutory conversion ($20,000) (Count III);

(b) Common Law Conversation ($20,000) (Count IV); and/or

(c) Money Had and Received ($191,612.09) (Count V);

(4) Pre- and post-judgment interest;

(5) Attorneys' fees and costs; and

(6) Such other relief the Court deems proper.

**WHEREFORE**, Plaintiff, Humana, prays that the Court enter judgment on behalf of Plaintiff, Humana, and against Defendants, Paris Blank LLP and Keith Marcus, and award Plaintiff, Humana all requested relief.

Respectfully submitted this 5th day of February, 2016,

John A. Burlingame (VSB #32694)
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
john.burlingame@squirepb.com

Michael P. Abate (*Pro Hac Vice* to be filed)
Dinsmore & Shohl LLP
101 South Fifth Street
Suite 2500
Louisville, KY 40202
Telephone: (502) 540-2359
Facsimile: (502) 585-2207
michael.abate@dinsmore.com

*Counsel for Humana Insurance Company*