IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| HUMANA INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:16CV79–HEH |
| | ) |
| PARIS BLANK LLP, *et al.*, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION
(Motion to Dismiss)

THIS MATTER is before the Court on Defendant Paris Blank LLP's ("Paris Blank") and Defendant Keith Marcus's ("Marcus") Motion to Dismiss (ECF No. 14), filed on March 16, 2016. Distilled to its essence, the Motion contends that the applicable federal statutory framework does not create a private right of action such that Plaintiff Humana Insurance Company ("Plaintiff" or "Humana") may pursue recovery in this Court. Accordingly, Paris Blank and Marcus (collectively "Defendants") ask this Court to dismiss the federal claims for failure to state a claim and to decline to exercise jurisdiction over the remaining state law claims. (Defs.' Mem. Grounds & A. Supp. Mot. Dismiss ("Defs.' Mem.") 1–2, ECF No. 14-1.) For the reasons set forth below, the Court will deny Defendants' Motion.

## I. BACKGROUND

On a motion to dismiss, the Court takes the well-pleaded allegations as true and views them in light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P.*

*& Patricia Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). Accordingly, the Court finds as follows:

Medicare operates as a federally-funded health insurance program for individuals aged sixty-five or older, suffering from certain disabilities, or battling End Stage Renal Disease. (Compl. ¶ 7, ECF No. 1.) Subchapter XVIII of the Social Security Act, also known as the Medicare Act, contains five "Parts." (*Id.* ¶ 8.) Applicable here, Parts A and B provide certain hospital and medical benefits and constitute "the original Medicare fee-for-service program option." (*Id.* ¶ 9.) Part C, commonly referred to as Medicare Advantage, provides an alternative option for Medicare beneficiaries by allowing for those eligible individuals to obtain health care benefits from private companies, known as Medicare Advantage Organizations ("MAO"). (*Id.* ¶ 10.) Funded by the Medicare Trust Funds, Medicare Advantage operates as a federal program under federal rules. (*Id.* ¶¶ 14–15.) Eligible individuals have the right to receive Medicare benefits either through Parts A and B or through Part C. (*Id.* ¶ 13.)

In 1980, Congress passed the Medicare Secondary Payer ("MSP") law. (*Id.* ¶ 17.) It creates a federal coordination of benefits between primary and secondary payers. (*Id.* ¶ 19–20.) Worker's compensation plans, liability insurance plans, and no fault insurance plans act as primary payers, and Medicare benefits act as secondary payers. (*Id.*) When a primary plan is responsible for payment for medical services, a secondary payer may make a conditional payment on behalf of the beneficiary and then seek recovery for such conditional payment from the primary plan. (*Id.* ¶¶ 21–22.)

2

Plaintiff contracts with the Centers for Medicare and Medicaid Services ("CMS") to administer Medicare benefits for those electing to receive their benefits through the Medicare Advantage program. (*Id.* ¶ 1.) Enrollee[1] elected to obtain Medicare Advantage benefits through Plaintiff. (*Id.* ¶ 34.)

On October 11, 2013, Enrollee suffered injuries as a passenger in a motor vehicle accident. (*Id.* ¶¶ 33, 35.) As a result, Plaintiff made conditional payments in the amount of $191,612.09 on Enrollee's behalf to cover medical expenses. (*Id.* ¶ 35.) Enrollee engaged Defendants to represent Enrollee. (*See id.* ¶¶ 33–46.) As a result of a lawsuit initiated after the accident, Enrollee received payments from several insurance companies totaling approximately $475,600. (*Id.* ¶ 36.)

The insurance companies issued checks for the settlement to Paris Blank, as well as to Humana and Paris Blank jointly. On April 17, 2014, Rockingham Casualty Company issued to Humana and Paris Blank a check for $20,000. (*Id.* ¶ 37.) Plaintiff alleges Marcus contacted Rockingham Casualty to ask it to reissue the check and make it payable solely to Paris Blank. (*Id.* ¶ 38.) Rockingham Casualty denied this request, and Marcus ultimately deposited the check without Humana's endorsement. (*Id.* ¶¶ 38–39.) Plaintiff contends a portion of these funds were distributed to Enrollee. (*Id.* ¶ 40.)

Additionally, Donegal Mutual Insurance Company issued a check to Paris Blank for $250,000 under Enrollee's underinsured motorist coverage. (*Id.* ¶ 41.) Plaintiff pleads that companies issued to Paris Blank, Enrollee, or both, checks in the amount of

---

[1] The parties refer to the individual beneficiary at the center of this suit as Enrollee to protect her privacy. (Compl. 1 n.1; Defs.' Mem. 2 n.1.) Enrollee passed away in April 2015. (Compl. ¶ 46.)

3

$100,000 from State Farm Insurance Company, $100,000 from Rockingham Mutual Insurance Company, and another $5,600 from Donegal Mutual Insurance Company under Enrollee's no fault policy. (*Id.* ¶ 42.)

On January 15, 2015, Plaintiff communicated to Enrollee that Enrollee owed to Plaintiff $191,612.09 in reimbursements for the conditional payments Plaintiff made for Enrollee's medical expenses. (*Id.* ¶ 43.) The communication sought payment within sixty (60) days and included information regarding the request of a waiver or the filing of an appeal. (*Id.*) Marcus sent a request for waiver to Plaintiff on Enrollee's behalf. (*Id.* ¶ 44.) The request contained correspondence between Marcus and the CMS purportedly showing that Enrollee did not owe obligations under Medicare Part A and Part B; however, the correspondence did not address any obligations to any MAO under Part C. (*Id.* ¶ 45.) On April 23, 2015, Plaintiff denied Enrollee's request for waiver and, as of the filing of the Complaint, had not received any reimbursement for the conditional payments. (*Id.* ¶¶ 47, 51.)

## II. LEGAL STANDARD

The well-pleaded facts contained within the complaint both inform and constrain this Court's review of a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). The Court must endeavor to determine the sufficiency of the complaint, "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court accepts plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *T.G. Slater &*

4

*Son, Inc.*, 385 F.3d at 841. The Court, however, "need not accept the legal conclusions drawn from the facts," nor must the Court "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

To survive Rule 12(b)(6) scrutiny, a plaintiff must provide more than merely "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Defendants lodge several challenges to Plaintiff's Complaint. These challenges, however, rest upon the assertion that no private right of action exits permitting Plaintiff to pursue recovery for any conditional payments. (Defs.' Mem. 7–25.) As a result, Defendants contend, this Court should dismiss Plaintiff's Complaint in its entirety. Without any binding Fourth Circuit precedent on point, Plaintiff responds that this Court should follow the reasoning of *In re Avandia Marketing, Sales Practices, & Products Liability Litigation* ("*In re Avandia*"), 685 F.3d 353 (3d Cir. 2012), in which the Third

Circuit found that MAOs indeed could maintain a private right of action to recover conditional payments made on behalf of a beneficiary. (Pl.'s Opp'n Defs.' Mot. Dismiss Compl. ("Pl.'s Opp'n") 15–22, ECF No. 16.)

As noted above, eligible individuals may elect to receive their Medicare benefits either from the Government under Parts A and B or from a MAO under Part C. *In re Avandia*, 685 F.3d at 357. If an individual elects to participate in Medicare Advantage, the CMS pays to the MAO a fixed amount for each enrollee, and the MAO then administers benefits and assumes the risk associated with insuring that individual. *Id.* at 357–58. A MAO exercises discretion as to the design of the plans; however, a MAO must provide benefits covered under Parts A and B of Medicare. *Id.* at 358. A MAO may provide additional benefits as well. *Id.* (citing 42 U.S.C. § 1395w-22(a)(1)–(3)).

Passed in 1980, the MSP statute creates a federal coordination of benefits regime between primary and secondary payers. The MSP statute generally prohibits Medicare from making payment for items or services to the extent "payment has been made or can reasonably be expected to be made under" workmen's compensation plans, liability plans, or no fault insurance plans. 42 U.S.C. § 1395y(b)(2)(A)(ii). In this manner, the MSP statute positions those plans as the primary payer and Medicare as the secondary payer.

The MSP authorizes "the Secretary" to make conditional payments—premised upon reimbursement—if the workmen's compensation plan, liability plan, or no fault insurance plan has not made or cannot be reasonably expected to make payment for those items or services. *Id.* § 1395y(b)(2)(B)(i). The government may then bring an action for

recovery of any conditional payments in the amount of double damages. *Id.* §1395y(b)(2)(B)(iii). The statute also generally "establishe[s] a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." *Id.* § 1395y(b)(3)(A).[2]

In *In re Avandia*, the Third Circuit addressed the precise question presented here: whether § 1395y(b)(3)(A) created a private right of action which a MAO could use to pursue recovery for conditional payments. The Third Circuit found that the plain language of the statute "is broad and unambiguous, placing no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary plan fails to appropriately reimburse any secondary payer." *In re Avandia*, 685 F.3d at 359. These private actors include MAOs. *See id.* at 360.

Even if the court had found the statute's language to be ambiguous, *Chevron* deference would have required the court to find MAOs could pursue recovery just as the government could. *Id.* Regulations clarified that a MAO exercised the same right of recovery against a primary plan, entity, or individual as the Secretary did under the MSP law. *Id.* at 366 (citing 42 C.F.R. § 422.108). A later memorandum from the CMS further

---

[2] A similar statute establishes MAOs as secondary payers in certain circumstances. A MAO may charge or authorize a provider of services to charge other insurance carriers or entities for payment of services on behalf of a beneficiary. 42 U.S.C. § 1395w-22(a)(4)(A)–(B). This secondary payer provision cross references the MSP statute. *Id.* § 1395w-22(a)(4) (citing *id.* § 1395y(b)(2)). The cross reference to the MSP statute explicitly recognizes that the MAO may act as a secondary payer in those same situations where Medicare acts as a secondary payer under § 1395y(b)(2). Although similar, this secondary payer provision is not directly applicable here because Plaintiff seeks recovery pursuant to § 1395y(b)(3)(A). (*See* Compl. ¶¶ 55–63.)

specified that the CMS "understood § 422.108 to assign MAOs the right (and responsibility) to collect from primary payers using the same procedures available to traditional Medicare." *Id.* (quoting Ctrs. for Medicare & Medicaid Svcs., Dep't Health & Human Svcs. Memorandum: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011)) (internal quotation marks omitted) (footnote omitted).

Although not binding precedent, this Court finds persuasive the Third Circuit's determination that a MAO may pursue recovery pursuant to the private right of action in § 1395y(b)(3)(A). Section 1395y(b)(2)(A)'s plain language establishes a private right of action to recover double damages where a primary plan fails to pay. Absent from the plain language of the statute is any restriction upon who may utilize that private right of action.

Even if the Court were to find the language ambiguous, CMS regulations afford MAOs "the same rights to recover from a primary plan, entity or individual that the Secretary exercises under the MSP regulations." *In re Avandia*, 685 F.3d at 366 (quoting 42 C.F.R. § 422.108). This regulatory promulgation is a permissible interpretation of the MSP statute. This interpretation allows the MAO—an entity providing Medicare benefits under Part C—to exercise the same right to recovery as the government—an entity providing Medicare benefits under Parts A and B—for any conditional payment made for which the MAO ultimately should not have been responsible. Under *Chevron* deference principles, the Court would still find that Plaintiff could pursue recovery in this suit.

Defendant describes *In re Avandia* as "aberrational" and notes the Third Circuit "is the only Circuit Court of Appeal decision holding that § 1395y(b)(3)(A) provides a

8

MAO a private cause of action for reimbursement." (Defs.' Mem. 10 (citing *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1154 (9th Cir. 2013).) Defendants then offer several cases in support of their conclusion that a MAO may not pursue a private right of action pursuant to 42 U.S.C. § 1395y(b)(3)(A). (*See id.* 9–19.) Many pre-date *In re Avandia*, and each is factually distinguishable in that none squarely addresses whether a MAO may maintain suit in federal court pursuant to § 1395y(b)(3)(A). Additionally, several cited cases expressly avoid deciding whether the Third Circuit correctly decided *In re Avandia*. *See e.g., Parra*, 715 F.3d at 1154 (stating the court "need not resolve whether *Avandia* was decided correctly"); *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 196–97 (S.D.N.Y. 2012) (discussing *In re Avandia* and other case law before stating "[t]he Court need not decide which line of cases to follow, because the question whether there is an express or implied private right of action for [MAOs] . . . does not control whether the Medicare Act preempts" a state statute).

Defendants are correct in stating the Third Circuit appears to be the only Circuit Court of Appeals to decide affirmatively that a MAO can pursue a private right of action under § 1395y(b)(3)(A). This status alone, however, does not diminish the persuasiveness of the Third Circuit's thorough and well-reasoned opinion. Moreover, other district courts outside of the Third Circuit have found *In re Avandia*'s reasoning persuasive and allowed MAOs to pursue a private right of action under the statute. *See, e.g., Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 94 F. Supp. 1285, 1290–91 (S.D. Fla. 2015); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 664–65 (E.D. La. 2014); *Humana Ins. Co. v. Farmers Tex. Cnty. Mut. Ins. Co.*, 95 F. Supp. 3d 983, 986

9

(W.D. Tex. 2014). Accordingly, although a dearth of courts may have decided the issue, this Court hardly is the first to follow the Third Circuit's well-reasoned opinion in *In re Avandia*.

Defendants next aver that Plaintiff may not maintain suit against Defendants as a law firm and an attorney representing Enrollee. (Defs.' Mem. 25-26; Defs.' Reply Pl.'s Opp'n Defs.' Mot. Dismiss 9-11, ECF No. 17.) Specifically, Defendants argue they are not primary payers and, therefore, fall outside the scope of recovery provided by any private right of action. (Defs.' Mem. 25.) Plaintiff, on the other hand, argues the statute's language reaches broadly enough to allow recovery from any entity—including law firms and attorneys—receiving payment from a primary plan. (Pl.'s Opp'n 14-15.)

Contrary to Defendants' position, the law does not carve out exceptions for attorneys and law firms. The statute generally establishes a private cause of action "in the case of a primary plan which fails to provide for primary payment." 42 U.S.C. § 1395y(b)(3)(A). Much like who may bring an action pursuant to the statute, the plain language fails to limit the parties against whom suit may be maintained.

To the extent the language is ambiguous, regulation dictates that MAOs "exercise the same rights to recovery from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108(f). CMS has promulgated regulations identifying attorneys as an entity from which recovery may be sought under the MSP law by the Secretary. *See id.* § 411.24(g). Accordingly, Plaintiff may maintain suit against Defendants for recovery of conditional payments.

10

Defendants next ask this Court to dismiss Plaintiff's request for declaratory judgment. Defendants contend that because Plaintiff has "failed to adequately plead any cognizable federal claim, . . . declaratory judgment is inconsistent with the law." (Defs.' Mem. 26–27.) Defendants additionally seek to dismiss Plaintiff's state law claims, arguing that this Court should decline to exercise jurisdiction over those claims in the absence of original, federal question jurisdiction. (*Id.* at 27.) Defendants premise both of these argument on the absence of a private cause of action pursuant to § 1395y(b)(3)(A). Because, however, the Court finds that Plaintiff can maintain this private right of action and Defendants pursue no alternative avenues in attacking declaratory judgment or jurisdiction over the related state law claims, this Court will deny Defendants' Motion on those grounds.

## IV. CONCLUSION

In sum, the Court finds that Plaintiff may pursue recovery pursuant to 42 U.S.C. § 1395y(b)(3)(A). Accordingly, the Court will deny Defendants' Motion to Dismiss (ECF No. 14).

An appropriate Order will accompany this Memorandum Opinion.

                                            /s/
                                    Henry E. Hudson
                                    United States District Judge

Date: May 10, 2016
Richmond, Virginia